[Cite as *Boney v. Boney*, 2010-Ohio-4245.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DONNIE BONEY, | ) | |
| | ) | CASE NO.    09 NO 363 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS. - | ) | O P I N I O N |
| | ) | |
| MARGUERITE BONEY, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:    Civil Appeal from Common Pleas Court,
Case No. 207-0105.


JUDGMENT:    Affirmed in part; Reversed in part and
Remanded.


APPEARANCES:
For Plaintiff-Appellee:    Attorney Margaret Boyd Laplante
139 West 8th Street
P.O. Box 640
Cambridge, Ohio  43725


For Defendant-Appellant:    Attorney Miles Fries
320 South Main Street
P.O. Box 190
Zanesville, Ohio  43702-0190


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite


Dated:  September 7, 2010

VUKOVICH, P.J.

¶{1}   Defendant-appellant Marguerite Boney (the wife) appeals from portions of the decision of the Noble County Common Pleas Court entered in the divorce action filed by plaintiff-appellee Donnie Boney (the husband).  First, the wife contends that the court did not set forth the basis for her spousal support award in sufficient detail to allow an adequate appellate review.  She then states that $500 per month for five years is an inadequate amount of spousal support.  She also argues that the court should have ordered the husband to pay her attorney fees.

¶{2}   Because the trial court failed to adequately explain its spousal support decision, this case is remanded.  Moreover, the amount of spousal support is inadequate in conjunction with the short duration of spousal support in this long-term marriage involving a homemaker spouse where the obligor has a steady job making more than $54,500 with full insurance benefits and all his meals are paid for three weeks out of every six weeks.  For many of these same reasons, we reverse and remand the decision to award the wife zero dollars in attorney fees.

¶{3}   As for property division, the wife argues that the court abused its discretion in allocating the debt.  Specifically, the court found that each party was held to be responsible for their own outstanding medical expenses incurred since the separation and that appellant would be responsible for approximately $20,000 in credit card debt.  This court concludes that the trial court's debt allocation decision was not unreasonable, arbitrary, or unconscionable.  As such, the trial court's property division is upheld.

STATEMENT OF THE CASE

¶{4}   The parties were married in November of 1979.  They had children in 1980 and 1985, both of whom are emancipated.  In July of 2007, after nearly twenty-eight years of marriage, the parties separated, and the husband filed for divorce.  On August 6, 2007, the court entered a temporary order prohibiting the use of the credit cards during the pendency of the action.  On October 22, 2007, the court awarded the wife $500 per month in temporary spousal support and ordered her to surrender all credit cards.  The divorce trial, which took place in December of 2008 and May of 2009, produced the following testimony.

¶{5}   The husband was fifty-two years old.  He has worked for the same employer since before the parties' marriage.  He generally works three weeks as first mate on a river boat and then receives three weeks off.  All of his meals are provided during the three weeks on the boat.  He earned $54,531 in wages in 2008.  (Tr. 106).  He expected a raise in 2009 as he typically receives an annual raise.  In 2009, he also began receiving $72 per trip for travel expenses to the company-provided transportation.  (Tr. 108).  He has medical, dental, and optical insurance through his employer with part of the premium deducted from his paychecks.  (Tr. 104).

¶{6}   The husband testified that the wife babysat during the marriage.  (Tr. 73).  The husband stated that the wife possessed computer skills and was capable of doing computer work as she regularly spent six to seven hours daily playing games on the computer.  (Tr. 70-73).  He opined that he never noticed any medical problems that would prevent her from working full-time.  (Tr. 70, 75).

¶{7}   The husband related that in January of 2007, he discovered a large amount of credit card debt incurred by the wife without his knowledge.  After the parties discussed the debt problem, he withdrew $26,000 from his 401K to pay off the debt.  (Tr. 54, 61).  He complained that after she incurred this credit card debt, she refused to seek employment outside of the home.  (Tr. 72).  In July of 2007, he received a telephone call regarding additional credit card debt of which he had no knowledge.  (Tr. 63-64).

¶{8}   The wife was forty-nine years of age at the time of trial with no post-high school training.  Before marriage, she babysat part-time for her sister's children.  After marriage, she was mainly a homemaker.  She testified that she had not worked as a babysitter in the recent past and noted that before her children were old enough to babysit, she would merely be present while they watched children.  (Tr. 162-163).  Her Social Security records show earnings of $299 in 1979 and $102 in 1992.  (Tr. 208).  She testified that the husband would not allow her to work during their marriage and would not let her go to college when she expressed interest in doing so.  (Tr. 136, 204, 206-207).

¶{9}   The wife testified that she is in poor health due to fibromyalgia, which causes her to experience numbness, pain, and memory problems.  (Tr. 208).  It was

established by testimony from both parties that the wife had been diagnosed with this illness nearly twenty years ago. (Tr. 70, 209). Her new physician's testimony confirmed her diagnosis and explained that her treatment includes physical therapy, medication, injections, IV therapy, and six visits to him per year. He stated that the condition limits her ability to remain in one position for long and interferes with concentration. He opined that she is not employable on a full-time basis at this time. The wife also stated that she could only sit at a computer for an hour at a time. (Tr. 163). The parties' daughter confirmed that the wife would suffer days where she could not get out of bed due to the pain caused by her condition. (Tr. 175-176).

¶{10} The wife stated that besides fibromyalgia, she also has high blood pressure, irritable bowel syndrome, and migraines. (Tr. 209-210). She testified that she needs two root canals at $1,000 per procedure. (Tr. 214). She provided evidence that COBRA coverage would cost more than $500 per month. An insurance agent testified that after COBRA coverage ended, she could only receive HIPPA coverage if she paid $1,800 per month due to her health conditions. (Tr. 132). She presented an exhibit containing her outstanding medical bills. She also presented nearly $20,000 in legal bills at $125 per hour. (Tr. 234).

¶{11} As for the credit card debt, the wife stated that the credit cards were used for marital purposes as they were used to purchase household items and for the parties' adult children. (Tr. 222). Some of the charges incurred for the benefit of one daughter included furniture, rent money, two laptops (one had been stolen), and college tuition. (Tr. 139-148, 160, 194). Some of the charges for this daughter that were said to have been repaid in cash to the wife by the daughter included Sirius radio and online games. (Tr. 143, 156). The wife revealed that she purchased over $2,000 worth of beauty supplies with the intent to sell them at parties. Since she could not find anyone to host the parties, she and the daughter started using the supplies themselves. (Tr. 141-142, 159-160). She claimed that appellant was aware of and involved in these purchase decisions.

¶{12} As for her purchases in the three months after the separation, she stated that these were necessary in order to survive until the court awarded temporary support. (Tr. 224). Notably, she placed her attorney's $2,000 retainer on a credit

card. (Tr. 138). She also took cash advances on various credit cards and testified that she used the cash to make payments on other credit cards, even though the court had ordered her to stop incurring debt on the credit cards. (Tr. 157-158). She has been living with her daughter since the court ordered her out of the marital residence in November of 2007. (Tr. 225).

¶{13} The wife also alleged that the husband had hit, scratched, and choked her. (Tr. 216). The parties' two daughters testified to having witnessed incidents of physical abuse by the father toward their mother. (Tr. 170, 172, 264).

¶{14} The court's August 4, 2009 divorce decree declared July 7, 2007 as the termination date of the marriage. The husband was awarded the marital residence in which the parties' were found to have no marital equity due to a mortgage and a $10,000 down payment which was found to have been derived from the husband's separate property. The court divided the marital portion of the husband's retirement plan and 401K evenly through a QDRO. Each party received a 1994 vehicle. The court ordered that each party would be responsible for payment of their own medical bills and for their own attorney fees.

¶{15} The court found that the parties' American Legion credit card had a $0 balance at the time of the parties' separation but now had a $7,150 balance. The court concluded that this balance was the sole responsibility of the wife because it was incurred by her after the separation and after temporary orders of court.

¶{16} The court found that a Circuit City/Chase card was held in the joint names of the wife and the parties' adult daughter and that the husband had no access to or knowledge of this card. This card had a balance at the time of separation of $6,901. The court noted that the card was used to purchase items for the adult daughter and beauty supplies for the wife. The court held that the balance on this card was the sole responsibility of the wife.

¶{17} The court found that the debt on the Maurice's card and the Sears card that was incurred prior to separation would be divided equally but the debt incurred after June of 2007 ($200 on the Maurice card and $770 on the Sears card) would be the sole responsibility of the wife. The court pointed out that after separation, the husband paid $2,760 in marital debt to Master Card and $982 to BP.

¶{18} The court found that the wife was capable of working. The court awarded spousal support to the wife in the amount of $500 per month for five years, terminable earlier if either party dies or if the wife remarries or cohabits in a quasi-marriage relationship. The wife filed timely notice of appeal.

<u>ASSIGNMENTS OF ERROR NUMBERS ONE & TWO</u>

¶{19} Appellant's first two assignments of error deal with spousal support. They provide:

¶{20} "THE TRIAL COURT'S AWARD OF SPOUSAL SUPPORT CONSTITUTED AN ABUSE OF DISCRETION AS IT WAS NOT SUPPORTED BY SPECIFIC FINDINGS OF FACT TO INDICATE THAT THE FACTORS SET FORTH IN O.R.C. SECTION 3105.18(C)(1) HAD BEEN CONSIDERED."

¶{21} "A SPOUSAL SUPPORT AWARD OF A LIMITED AND FINITE DURATION WAS ARBITRARY AND UNREASONABLE IN THIS CASE OF A LONG TERM MARRIAGE WITH A HOMEMAKER SPOUSE WITH LITTLE OPPORTUNITY TO DEVELOP MEANINGFUL EMPLOYMENT OUTSIDE THE HOME."

¶{22} In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income. R.C. 3105.18(C)(2). In determining whether spousal support is appropriate and reasonable, and in determining the amount and duration of spousal support, the court shall consider all of the following factors: (a) the income of the parties; (b) the relative earning abilities of the parties; (c) the ages and the physical, mental, and emotional conditions of the parties; (d) the parties' retirement benefits; (e) the duration of the marriage; (f) the extent to which it would be inappropriate for a custodian of a minor child of the marriage to seek employment; (g) the marital standard of living; (h) the parties' education; (i) the parties' relative assets and liabilities, including court-ordered payments; (j) the contribution of each to the education, training, or earning ability of the other; (k) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) the tax consequences, for each

party, of an award of spousal support; (m) the lost income production capacity of either party that resulted from that party's marital responsibilities; and (n) any other factor that the court expressly finds to be relevant and equitable.  R.C. 3105.18(C)(1).

¶{23} Although the court need not expressly comment on each factor or explain its reasoning in minute detail, the court must state the underlying basis for the award and the court's findings must enable the reviewing court to determine the award was reasonable and that the relevant factors were considered.  *Graham v. Graham*, 7th Dist. No. 08NO353, 2009-Ohio-6876, ¶32; *Miller v. Miller*, 7th Dist. NO. 08JE26, 2009-Ohio-3330, ¶142.  Specifically, the trial court must indicate its basis for the award of spousal support in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law.  *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 97.  Thus, if the entry does not provide some illumination of the facts and reasoning for the award, the case should be remanded.  *Lepowsky v. Lepowsky*, 7th Dist. No. 04CO42, 2006-Ohio-667, ¶52-55.  According to all of this case law and contrary to the position of the husband on appeal, we do not presume the trial court considered the factors, especially where the amount and duration of the award are also suspect.  See *Schneider v. Schneider* (1998), 61 Ohio App.3d 164, 167-168 (noting that *Kaechele* weakened the premise mentioned in *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 356 that it is presumed the trial court considered the factors).

¶{24} In *Lepowsky*, we remanded a case for a lack of findings as to why the wife was awarded $1,020 a month for less than seven years after a thirty-six-year marriage where the husband made $100,000 per year and the parties were in their mid-fifties.  Id.  After the remand, we again reversed and remanded with instructions to increase the amount of the award and the duration of the award, noting the long-term marriage with a vast disparity in income ability and expected Social Security benefits.  *Lepowsky*, 7th Dist. No. 06CO23, 2007-Ohio-4997, ¶94.  See, also, *Lepowsky v. Lepowsky*, 7th Dist. Nos. 08CO10, 08CO29, 2010-Ohio-1544.

¶{25} We also recently reversed a decision awarding the wife $400 per month for ten months where the husband made $62,000 per year and the wife had a low earning potential after a twenty-three-year marriage.  *Graham*, 7th Dist. No. 08NO353.  We held that the trial court did not make findings as to the relevant factors or provide

the underlying basis for the award. Id. at ¶33. This case falls into this same category of cases.

**¶{26}** We begin with the trial court's findings that could be construed as reflecting the consideration of certain statutory factors. The court's introduction stated that the parties were married on November 23, 1979 and that the termination date would be July 7, 2007. See R.C. 3105.18(C)(1)(e) (duration of marriage). However, the court seemed to give no consideration to the fact that this was a long-term marriage.

**¶{27}** As for the retirement benefits of the parties, the court valued the husband's retirement benefits as part of the property division and divided the marital portion equally. See R.C. 3105.18(C)(1)(d). As part of the property division, the court also made mention of assets and liabilities of the parties. See R.C. 3105.18(C)(1)(i). The wife received $12,000 to equalize personalty granted to the husband and a future entitlement to half of the marital portion of the husband's retirement plan (with a hypothetical cash balance of $91,000 which would translate into a monthly benefit of $774 if husband retired in 2008) and a 401K (valued at $70,000 in May of 2009). The court outlined the credit card debt. Still, there is actually no indication that the court took these statements (made during the property division) into consideration as factors in fashioning the spousal support award. This is especially so when the absence of the remaining important factors is considered.

**¶{28}** For instance, the trial court failed to state the parties' ages or education levels. See R.C. 3105.18(C)(1)(c), (h). The court made no mention of the parties' work history, such as the husband's steadily improving position at the same employer for thirty-three years versus the wife's total lack of work history. The court did not evaluate the parties' relative earning abilities. See R.C. 3105.18(C)(1)(b). The court did not even state how much the husband earned. See R.C. 3105.18(C)(1)(a). The court made no reference to the parties' standard of living during the marriage or how the wife will be able to maintain a standard of living anywhere near that previously experienced. See R.C. 3105.18(C)(1)(g). Notably, the husband intends to remain in the marital residence, and the wife is living with their daughter and son-in-law.

¶{29} The court made no mention of the parties' medical or emotional conditions, even though this was a major factor emphasized at trial. See R.C. 3105.18(C)(1)(c). The court found that the wife was able to work, contrary to her and her physician's testimony, but did not state whether it found that she was able to work full-time. Since the court found that the wife was able to work, it is relevant that the court failed to recognize the time and expense necessary for the wife to acquire job experience and training so that she would be qualified to obtain suitable and gainful employment. See R.C. 3105.18(C)(1)(k).

¶{30} The court did not consider any contribution of the wife to the earning ability of the husband. See R.C. 3105.18(C)(1)(j). The court did not recognize the lost income production capacity of the wife that resulted from her assuming her marital responsibilities including the care of the parties' two children. See R.C. 3105.18(C)(1)(m). The husband did not dispute her claim that he wished her to remain a homemaker (until just prior to separation when he withdrew money from his 401K to pay off credit card debt). The court made no mention of the tax consequences of the spousal support award, namely that the $6,000 per year received by the wife will be a tax deduction for the husband. See R.C. 3105.18(C)(1)(l). Due to the paucity of findings regarding spousal support and the circumstances of this particular case, the trial court's judgment is reversed and the case is remanded for a more thorough judgment entry.

¶{31} In doing so, we must also instruct the trial court regarding the amount and duration of support. The parties were married nearly twenty-eight years at the time of separation and filing and nearly thirty years at the time of the divorce decree. The husband was fifty-two years old at the time of trial. He has been employed at the same employer for thirty-three years. He has received many promotions over the years. He earned over $54,500 in 2008 from his employment. As he generally receives a raise each year, this is likely to steadily increase over the term of the award. In 2009, his employer began providing him with $72 per round-trip to defer the cost of his driving to the company-provided transportation. Every three weeks, he receives free meals for three weeks. He has health, vision, and dental insurance. He was awarded the fairly newly-constructed marital residence, which sits on approximately

twenty-seven acres and is accompanied by two barns.[1]  There are also mineral royalty checks, which range from $760 to $1,378 per year.

¶{32} The wife was forty-nine years old at the time of trial.  She was a homemaker for the entire marriage.  She has no education, job training, or work history.  Contrary to the husband's claim on appeal, sporadic babysitting is not evidence of employability and the ability to surf the internet does not equate to high computer skills.  The wife is unlikely to make more than minimum wage.  Although the trial court may believe that her condition will not preclude her from obtaining some kind of employment, the wife does have a serious medical condition, which will make finding and maintaining a full-time position difficult.  This condition will also ensure future medical and prescription bills.  She has no health insurance.  She is uninsurable as an individual.  Under HIPPA, she is entitled to a policy only if she pays $1,807 per month, which is not possible for this person to do.

¶{33} The wife has made no qualifying contributions to Social Security, and her eligibility to collect as a spouse will not begin until years after her spousal support terminates.  Any retirement benefits from the husband's pension are not available until he retires, which he expressed that he had no intention of doing in the near future.  Finally, the wife is in debt, drives an unreliable fifteen-year old vehicle, and lives with her daughter.

¶{34} Under the totality of the facts and circumstances, the amount and/or duration of spousal support is unreasonable.  See *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67 (setting forth this standard of review).  As an award of $500 per month for five years is not rational in this situation, the trial court abused its discretion in this regard as well.  Thus, in remanding for more thorough findings, the trial court is instructed to increase the wife's award in amount and/or duration.

¶{35} The wife asks that we order an indefinite award of spousal support.  The Supreme Court has stated that in cases of long-term marriage, parties of advanced age, or a homemaker spouse with opportunity to develop a career, the trial court *may*

_____

[1]This property was found to be valued at only $145,000 based upon the testimony of the husband's appraiser, as opposed to the testimony of the wife's appraiser, who valued the property at $208,000 in November of 2007 (and $187,300 in December of 2008) and who noted that they were granted a construction loan for more than $150,000, which loan did not even take into consideration the value of their underlying property.  (Tr. 95-97).

fashion a spousal support award of indefinite duration.  Id. at 68.  Still, definite awards are preferred and should be used where the trial court believes that the obligee has the potential to become self-supporting.  Id.  We thus refrain from substituting our judgment for the trial court as to whether the wife eventually has that potential; a reasonable person could believe either side's claim as to her future potential.  Thus, although the trial court could have used its discretion to make the award indefinite, an award of indefinite duration is not absolutely required here.

<u>ASSIGNMENT OF ERROR NUMBER THREE</u>

¶{36} Appellant's third assignment of error alleges:

¶{37} "THE TRIAL COURT ERRED IN DETERMINING THAT ALL OF THE PARTIES' CREDIT CARD DEBT AND THE APPELLANT'S MEDICAL EXPENSES WERE SEPARATE PROPERTY."

¶{38} In fashioning a property division, the court shall divide the property equitably.  R.C. 3105.171(B).  A division of marital property should be equal unless this would be inequitable.  R.C. 3105.171(C).  In making a division of marital property, the court shall consider among other factors the assets and liabilities of the spouses.  R.C. 3105.171(F)(2).  Although the statute refers only to dividing marital property, it has been held that a court must equitably divide both marital assets and marital liabilities without abusing its discretion.  See, e.g., *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 86-87; *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, fn.1., 132.  Since the statute defines marital property but does not define marital debt, this court has stated that marital debt should be defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose.  *Ketchum v. Ketchum*, 7th Dist. No. 01CO60, 2003-Ohio-2559, ¶47.

¶{39} It has also been stated that a valid consideration in allocating debt is whether both spouses knew of the accounts or whether one falsely represented that the account was paid off.  See, e.g., *Combs v. Combs*, 5th Dist. No. 2008CA169, 2009-Ohio-1683; *Elliott v. Elliott*, 4th Dist. No. 05CA2823, 2005-Ohio-5405.  The burden of proving that a debt incurred during the marriage is separate is on the one claiming that the debt is not marital.  *Vergitz v. Vergitz*, 7th Dist. No. 05JE52, 2007-Ohio-1395, ¶12.

¶{40} Here, the court found the marriage termination date to be July 7, 2007, the approximate date of separation. See R.C. 3105.171(A)(2)(b). The court found that each party has outstanding medical bills and that each will be responsible for their own medical bills. Initially, we note that the husband presented one outstanding medical bill for $464. (Tr. 285). On appeal, the wife's brief states that she presented evidence of $20,000 in outstanding medical bills. (Apt. Brief at 8-9, 18). However, this is factually incorrect.

¶{41} The wife testified merely that her outstanding medical bills were contained in Exhibit 16A. (Tr. 232). The total of the bills contained in this exhibit, after payments received from the husband's insurance, is approximately $2,000, not $20,000. (We also note that a prescription bill for $89 was contained in Exhibit 16A but was also part of Exhibit 16B, which was said to contain the medical bills that she paid). Thus, according to the wife's own evidence, she was allocated approximately $2,000 of her own outstanding medical expenses, and the husband was allocated $464 of his own outstanding medical expenses.

¶{42} This allocation is not grossly disproportionate and is not unreasonable, arbitrary, or unconscionable. In so concluding, we first emphasize that the marriage was said to have terminated in July of 2007. Yet, many of the bills were incurred from May through September of 2008, and one of the bills was incurred in March of 2009, months after the first divorce hearing. It should also be noted that nearly half of the outstanding bills are owed to one creditor. Contained within Exhibit 16A are the charity guidelines from that creditor which seem to permit the wife to have her balances totally erased once the creditor is informed that the wife's income fell under the guideline for free care for the periods of service and is shown the court's entry which states that the marriage terminated in July of 2007 and that the wife is responsible for her own medical bills. This would drastically lower her outstanding medical bills. For all of these reasons, her argument concerning the outstanding medical bills within Exhibit 16A is without merit.

¶{43} We now turn to the wife's argument that the court abused its discretion in allocating approximately $20,000 worth of credit card debt to her and only allocating approximately $4,500 to the husband. First, we address the Maurice's credit card

debt. The wife purchased $85.60 worth of women's clothing in June of 2007. The court ordered this to be divided evenly by the parties as marital debt. The wife paid this bill in August of 2007. However, because the payment was late, she incurred late fees and finance charges. She then let these continue to build up so that the card had a balance of $282.46 at the last bill provided to the court. The card was solely in the wife's name, and the husband testified that he was unaware of the existence of this card. Had the wife paid the initial bill on time or paid the balance of a mere $23 by September 21, 2007, another $250 in finance charges and late fees would not have accrued. Considering the minimal amount necessary to have avoided these penalties, the court's resolution regarding this Maurice's debt was not unreasonable, arbitrary, or unconscionable. Although the court could have allocated this debt differently, it was not required to do so under the facts existing herein.

¶{44} Next, we address the American Legion credit card. The court found that the balance was over $7,100 at the time of trial but the balance on the account at the time of separation had been $0. The court noted that the husband had fully paid off this card in January of 2007 upon discovering the balance at that time. A statement evidences that over $10,000 was paid to satisfy the balance on this card on January 31, 2007, which was the date the husband paid a total of $20,000 in credit card debt out of his 401K. The August of 2007 statement confirms that there was still a $0 balance at the time of separation. The court concluded that the balance was thus incurred by the wife after separation and after the temporary orders of the court (ordering her to cease incurring credit card debt) and therefore is a separate debt of the wife and shall be her sole responsibility.

¶{45} Since $2,000 on this card represents the wife's attorney's retainer, we shall discuss this amount under the next assignment of error dealing with attorney fees. This leaves us with an allocation of just over $5,000 on this card to the wife.

¶{46} In the month after the parties' separation, the wife made $1,500 in purchases and took $850 in cash advances. Contrary to the trial court's statement, this was *prior* to the court's August 6, 2007 temporary order prohibiting use of the credit cards. After the court's order, she continued to use the cards for purchases and

over $1,000 in cash advances until the court physically removed the cards from her possession at a hearing in October of 2007.

¶{47} It was reasonable to allocate to the wife the responsibility for any purchases and cash advances made between the court's August 6, 2007 order and the time the court removed the cards from her. These purchases were made in direct contravention of the court's order, and she was living in the marital residence at the time.

¶{48} It may appear unreasonable to hold the wife wholly liable for the $2,300 incurred prior to the trial court's order. Although this was after the court-chosen termination date of the marriage, the wife had no income and received no temporary support until mid-October when she was provided with $250 for that month and then $500 for each month thereafter.

¶{49} Holding the husband liable for these charges would at first glance appear to be a proper substitute for three and one-half months without temporary support. However, approximately $800 of the charges in this time period were incurred for the benefit of the parties' daughter during the move to Iowa, and the trial court could disbelieve that the husband agreed to spend this money on their daughter. Thus, it was reasonable to refuse to hold the husband liable for all of the $2,300 spent prior to the temporary orders.

¶{50} Although it may then seem equitable to allocate half of this amount or $1,150 to the husband, the trial court could have rationally credited the husband with the debt he paid after separation. For instance, the court pointed out that after separation, the husband paid off $2,760.40 in marital debt on the parties' Master Card and $982.68 in marital debt on the BP card, for a total of $3,743.08. As such, the court did not act unreasonably, arbitrarily, or unconscionably in allocating the American Legion credit card debt.

¶{51} We next address the Sears card. This card had a balance of $1,648.76 at the time of separation. The court held that most of this debt is a marital debt to be divided equally but the $770 worth of charges incurred by the wife after separation would be the sole responsibility of the wife. The court stated that the wife admitted that she continued to use the cards until they were confiscated by the court. However,

there is no testimony that she continued to use the Sears card. And, there is no evidence in the form of statements to show that she in fact did use this card. The statements that are in evidence tend to show that the balance, found by the court to be a marital balance, increased prior to the time that it was sent to collection due to late fees, finances charges, and overlimit fees. See Exhibit 13. Still, this card was only in the wife's name, and the husband claimed he was unaware of its existence. (Tr. 60-61). In any case, even if it would have been more reasonable to hold the wife only liable for half of the entire Sears bills as opposed to half of part of it and all of the last $770, it is rational to credit the husband with the amount he paid toward marital debt. This amount could reasonably be used to offset the $3,743.08 that the husband paid in marital debt after separation. Thus, the allocation of the Sears card debt is not unreasonable, arbitrary, or unconscionable.

¶{52} We now address the Circuit City/Chase card. The trial court found that the balance at the time of separation was $6,901.01. (This balance is from a statement that actually includes some purchases made after the separation). At the time of trial, the card was in collection for over $10,000. This card was in the names of only the wife and the parties' daughter (who was twenty-two in the summer of 2007). Many of the charges on this card were for the benefit of the daughter. For instance, the wife testified that she used the card to purchase the daughter's two laptop computers (the first one was stolen). (Tr. 146-148). The last computer was purchased for $1,845. (Tr. 160).

¶{53} The wife testified that the husband agreed with the purchases on this card, including the laptops (noting that he thought they would be reimbursed on their homeowner's insurance for most of the price of the second computer). (Tr. 148). The husband initially testified that he was unaware of the existence of the Circuit City/Chase card until the court proceedings began. (Tr. 59-60). He then stated that he found out on July 6, 2007, when he received a telephone call from the credit card company inquiring about charges made in Iowa. (Tr. 63). The court found that the husband was unaware of the existence of this card.

¶{54} However, the husband testified that in January of 2007, he withdrew $26,000 from his 401K to pay off $20,000 in credit card debt ($6,000 went to taxes and

penalties on the early 401K withdrawal). (Tr. 54). As discussed above, the American Legion statement shows a payment of the balance of $10,052.61 on January 31, 2007. Likewise, the Circuit City/Chase card evidences a payment of $9,358.50 on January 31, 2007. Thus, it is incredible to believe that the husband did not know about the existence of the Circuit City/Chase card during the marriage. Still, as will be demonstrated below, this is not a reversible issue.

¶{55} Many of the purchases are clearly solely for the benefit of the daughter, who is a card holder, whereas the husband is not. The trial court was in the best position to decide whether the husband agreed to the purchases for the parties' twenty-two year old daughter. Accordingly, it was rational to refuse to hold the husband liable for any debt attributable to the daughter such as $1,845 for a second computer, various $11 charges to a software company, $400 for the daughter's food, lodging, and other purchases during a trip to Iowa in June of 2007, or various $42 charges for the daughter's satellite radio subscription. It was also not unreasonable to refuse to hold the husband liable for $2,000 in charges the wife made on the card to a beauty supply company in June and July or the $709 made in April, where the wife had plans to resell these items and currently retains and uses these items.

¶{56} It should be noted that there is evidence that the card had been previously used for some marital purposes. For instance, in December of 2006 and January of 2007, a statement shows purchases of prescriptions and food. However, this was paid off by the 401K withdrawal. After separation, a statement shows charges for prescriptions. Even if some of these identifiable amounts should be partially attributable to the husband because they were incurred prior to the court's temporary order to stop using the credit cards and at a time when the wife received no temporary support, there are still a few hundred dollars of credit left to give the husband due to his payment of the parties marital debt after separation. (Refer back to our analysis regarding the American Legion and the Sears card).

¶{57} Prior to June of 2009 (which is when many charges for the daughter's benefit were made and when some of the expensive beauty supplies were purchased), the Circuit City/Chase card had a balance under $4,000. This means that the card went from nearly $0 to $4,000 between February and June of 2007. Considering the

facts set forth above, it would be reasonable for the trial court to refrain from making the husband liable for any amount over $4,000. Whether he should be liable for half of this amount is the next question.

¶{58} In February of 2007, there was no balance and $75 in charges were made, $20 of it in prescriptions. A statement shows that $75 for prescriptions was charged in April. Most of the other $1,000 in charges on that statement were for food and gas at out-of-town locations, which could be seen as benefiting the daughter. There is no statement for most of the March and May charges.

¶{59} Although the husband had the burden to show separate debt, the account belonged to the wife and daughter. They did not cooperate in producing the records. The credit card company continually refused the husband's attempts to retrieve these records. A great multitude of purchases for which we do have evidence only benefited the daughter, and the trial court could disbelieve the wife's testimony that the husband acquiesced to these purchases. The trial court could also believe that (after making the large withdrawal from his 401K) the husband anticipated that all unnecessary charging would cease.

¶{60} Even if some of the debt was not actually separate, such as the charges for prescriptions, this debt could still be properly allocated to the wife under the facts of the case. We note that the husband paid all mortgage debt, utility bills, and insurance (including car insurance for the wife) for the two years between separation and divorce. Although the wife only separately lived in the residence from July through mid-November of 2007 and he was eventually awarded the residence, his actions represented the payment of marital debt for the preservation of a marital asset, which could have provided equity in the right real estate market (or had the court believed the testimony of the wife's appraiser). For all of these reasons, we conclude that allocation of the Circuit City/Chase debt to the wife was not unreasonable, arbitrary, or unconscionable.

¶{61} The last item in dispute is a bill from Rodale Publishing. On July 4, 2007, the wife ordered four items entitled, "Alternative Cures That Really Work," "Alternative Cures," "Green Pharmacy Anti-Aging Pres.," and "Micro Miracles." The last bill from Rodale was for $118.90 due on December 25, 2007. This amount had been increased

$3 per month in late fees. The court found that the $118.90 bill was not a marital debt, was a separate debt of the wife, and shall become her sole responsibility. The wife testified that books were partly to assist the husband's diabetic condition and to help her cook healthier.

¶{62} Notably, this purchase was made prior to the court-ordered July 7, 2007 termination date of the marriage. Even if the court disbelieved the wife's testimony that the purchase was for the joint benefit of the parties, the purchase seems to have a valid household purpose as an attempt to become educated on ways to avoid incurring medical bills and staying healthy. The court erred in stating that this was not marital debt. However, because the wife apparently retains these items, it was not inequitable to assign the debt attached to the items to her.

¶{63} Considering the totality of the facts and circumstances existing in this case, we uphold the allocation of the parties' medical and credit card debts.

ASSIGNMENT OF ERROR NUMBER FOUR

¶{64} Appellant's fourth and final assignment of error contends:

¶{65} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD ATTORNEY FEES TO THE APPELLANT."

¶{66} The wife testified that she was being charged $125 per hour by her attorney. (Tr. 234). Her Exhibit 26 shows nearly $20,000 in attorney fees, and this did not include the May of 2009 continuation of the divorce trial. The trial court ruled that the parties' would each be responsible for their own attorney fees. For essentially the same reasons that she used to argue that her spousal support award was insufficient, the wife argues that the failure to award her attorney fees was an abuse of discretion. The husband responds that he had to pay his own attorney fees and that he lacks available funds to pay her attorney fees.

¶{67} Pursuant to R.C.3105.73(A):

¶{68} "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the

parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."

¶{69} Whether to award attorney fees is a discretionary decision of the trial court. *Rand v. Rand* (1985), 18 Ohio St.3d 356, 359. Notably, the statute not only uses "may" for whether to grant attorney fees but also uses "may" when listing factors that can be considered. R.C. 3105.73(A). Cf. former R.C. 3105.18(H) (which provided that the court "may" award fees if it found the other had the ability to pay and then provided that in determining whether to award the fees, the court "shall" consider whether a party will be prevented from fully litigating and protecting their interests). This is because the payment of attorney fees is primarily the function of the party who retains the attorney. *Clark v. Clark*, 7th Dist. No. 03NO308, 2004-Ohio-1577, ¶66.

¶{70} We now evaluate the relevant considerations. As for marital assets, the parties had no major assets besides the retirement accounts to be paid at a later time. The husband was ordered to pay the wife $12,000 to equalize the personalty he received. After this payment, the husband would not have much cash left to pay for attorney fees. Thus, any payment of attorney fees by the husband would have to be gradual. However, he has his own attorney fees to pay. He is also responsible for spousal support and has a mortgage payment to make if he wishes to retain the residence.

¶{71} As for income, the husband makes over $54,500 and has many employer-provided benefits. The wife has no income and will likely not make more than minimum wage in what will likely start as a part-time job. The wife also has no insurance, some outstanding medical bills, and a high likelihood of future medical bills.

¶{72} As for conduct, the husband's attorney had much difficulty obtaining credit card records seemingly due to the wife's failure to collect these records herself, and she continued to incur credit card debt after the court ordered her to refrain from doing so. The court could also have disbelieved the wife's testimony that the husband was aware of and directed the credit card purchases made prior to separation, which debt was a cause of separation and a cause of much of the work during the divorce proceedings. On the other hand, the wife and her daughters related much negative conduct of the husband.

¶{73} The amount of temporary support was $500 per month starting in November of 2007. The wife received nothing in July, August, or September, and she only received $250 for October. As aforementioned, she charged a $2,000 retainer on her credit card.

¶{74} Considering all of the facts and circumstances of this case, the trial court could rationally decide that it would be inequitable to order the husband to pay for his own and all of the wife's attorney fees. However, it was unreasonable and thus an abuse of discretion for the court to fail to order the husband to pay at least some of the wife's attorney fees. For instance, he should at least be responsible for the $2,000 retainer paid prior to any temporary support order (and prior to the time the court ordered the wife to stop using the credit cards). In support, we reiterate the long-term marriage, the wife's long-time homemaker status, the disparity in income and income-production capacity, the lack of work history and employment skills for the wife, and the wife's large credit card debt. Thus, on remand the trial court shall reconsider the issue of attorney fees as it reconsiders the remainder of the spousal support order.

Donofrio, J., concurs.
Waite, J., concurs.