[Cite as *Rodgers v. Rodgers*, 2017-Ohio-7886.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 105095

## DANIELLE M. RODGERS

PLAINTIFF-APPELLANT

vs.

## DAVID B. RODGERS

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-15-357336

**BEFORE:** E.T. Gallagher, J., McCormack, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 28, 2017

**ATTORNEYS FOR APPELLANT**

Joseph G. Stafford
Nicole A. Cruz
Stafford Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

James A. Loeb
Baker & Hostetler, L.L.P.
127 Public Square, Suite 200
Cleveland, Ohio 44114

Bridgette D. Pozzuto
Urban & Pozzuto, L.L.C.
55 Public Square, Suite 2001
Cleveland, Ohio 44113

**Guardian Ad Litem**

Jacob A.H. Kronenberg
Kronenberg & Belovich Law, L.L.C.
635 West Lakeside Avenue, Suite 605
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Plaintiff-appellant, Danielle Rodgers, appeals a judgment of divorce, and raises four assignments of error:

1. The trial court erred as a matter of law and abused its discretion in its division of property under R.C. 3105.171(B).

2. The trial court erred as a matter of law and abused its discretion in its determination of the amount and duration of spousal support.

3. The trial court erred as a matter of law and abused its discretion in its determination of child support.

4. The trial court erred as a matter of law and abused its discretion in ordering Danielle to pay $50,720 towards David's outstanding attorney fees.

{¶2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶3} Danielle and defendant-appellee, David Rodgers, were married in 2001 and had three children born as issue of the marriage. In May 2015, Danielle filed a complaint for divorce seeking, among other things, to be designated as the residential parent and legal custodian of the minor children. David filed a counterclaim for divorce, and the court issued mutual restraining orders against both parties to prevent the dissipation of marital assets.

{¶4} At the time the complaint was filed, David had been employed as a research analyst at R. W. Baird, a private equity firm, since October 2012. At the time of trial, David received an annual base salary of $160,000, plus substantial annual bonuses paid each January for work performed during the prior calendar year. The amount of the

bonuses fluctuated from year to year and tended to be significantly larger than David's base salary.

**{¶5}** During the marriage, the parties deposited David's bonuses into a joint account and used the funds to pay expenses throughout the year. In March 2015, prior to filing the complaint for divorce, Danielle removed $82,000 from the parties' joint account to cover living expenses for herself and the children during the impending divorce proceedings. However, in September 2015, the trial court issued a temporary support order, retroactive to June 12, 2015, that awarded Danielle $14,166 per month in temporary spousal support and $1,265 per month in temporary child support.

**{¶6}** While the divorce action was pending, David transferred funds from the parties' marital accounts at R.W. Baird to the parties' joint account at KeyBank, which he then transferred to an individual account at Huntington Bank, where his paychecks were being deposited. David used these funds to make temporary child and spousal support payments, pay living expenses and attorney fees, and to purchase a house. The parties stipulated that the funds David took to buy the house should be allocated against him in the division of marital property.

**{¶7}** David filed several pretrial motions, including a motion to modify child and spousal support and for attorney fees. At the time of trial, David owed a temporary support arrearage in the amount of $3,218.11. David requested a credit for amounts he had paid for temporary support and a recalculation of temporary support based on the bonus he received in January 2016. David's 2016 bonus was significantly less than the

bonus he received in January 2015 on which the temporary support obligations were based.

{¶8} In David's motion for attorney fees and litigation expenses, he argued that Danielle made false allegations that he sexually abused their children, which required him to retain experts to defend against the allegations that were never substantiated. These services significantly increased the scope of pretrial litigation as well as the length of the trial itself.

{¶9} After the trial was concluded, the magistrate issued a decision dividing the parties' marital property. The division of marital property was based on the parties' stipulations and trial testimony. The magistrate granted David's motion to modify child and spousal support and reduced the amounts based on his 2016 income. The magistrate also granted David's motion for attorney fees and expenses and ordered Danielle to pay David $50,720.

{¶10} Danielle filed timely objections to the magistrate's decision. The trial court overruled the objections and adopted the magistrate's decision in its entirety. Danielle now appeals the trial court's judgment.

## II.  Law and Analysis

{¶11} We review a trial court's judgment in a divorce case for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989); *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130, 541 N.E.2d 597 (1989). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable."

*Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Thus, our standard of review is deferential, and we may not simply substitute our judgment for that of the trial court.

### A. Marital Property

{¶12} In the first assignment of error, Danielle argues the trial court abused its discretion in its division of marital property because it omitted certain marital assets and erroneously allocated contingent tax liabilities to David.

{¶13} R.C. 3105.171 directs a trial court to equitably divide the parties' marital property. An equitable division of marital property generally involves an equal division of marital property. However, "[i]f an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1).

{¶14} R.C. 3105.171(A)(3)(a) defines "marital property," in relevant part as:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage.

{¶15} Danielle argues the magistrate failed to include $105,000 in David's individual account at Huntington Bank in the list of marital assets. However, David's

Huntington account was listed in a joint stipulation of the parties' marital assets, which the court accepted and identified as Exhibit No. 3. The parties' stipulation states, in relevant part, that "[t]he parties have marital assets and debts as set forth on attached Joint Exhibit I." Thus, the stipulation is a complete list of the parties' marital assets.

{¶16} With respect to the $105,000 in David's Huntington account at the time of trial, joint exhibit I states that "[h]usband shall retain the account without offset in the equitable distribution of property." Therefore, Danielle forfeited any claim she may have had to these funds when she agreed that David was entitled to the full amount of those funds without offset.

{¶17} Danielle argues the magistrate erroneously failed to account for and divide $143,800 that David removed from the R.W. Baird investment account #0388. She also contends the magistrate failed to include the $150,000 David withdrew from the parties' joint KeyBank account in the allocation of marital property even though David admitted at trial that he withdrew the money from the parties' joint account and deposited the funds into his separate account at Huntington Bank. However, David testified that he transferred the $143,800 from R.W. Baird account #0388 to the parties' joint KeyBank account, and they were included in the $150,000 that David transferred from the joint KeyBank account to his individual Huntington account. (Apr. 1, 2016, tr. 187-188.)

{¶18} Danielle contends, citing David's admission that he transferred the $150,000 from the parties' joint KeyBank account to his Huntington account, that the court failed to divide this asset. However, David testified that he used the funds to purchase and

improve a home for himself and the children. Although the magistrate did not specifically refer to the $150,000 withdrawal in her decision, she allocated the residence David purchased with the funds to him in the division of marital assets. (Magistrate's Decision 11.) In accordance with the parties' joint stipulation, the magistrate determined the house and improvements were valued at $113,174.

{¶19} David testified that, in addition to buying the house, he used the transferred funds, as well as the paychecks that were deposited into the Huntington account, to pay living expenses, child and spousal support payments, guardian ad litem fees, and supervision fees while the divorce was pending. At the time of trial, the transferred funds were completely depleted. Moreover, Danielle stipulated that the $105,000 in David's individual Huntington account at the time of trial belonged to David without offset. (Apr. 1, 2016, tr. 184-196; Apr. 5, 2016, tr. 144-151.) Therefore, the magistrate did not err in failing to account for and divide the $150,000 David withdrew from the parties' joint KeyBank account, some of which came from R.W. Baird investment account #0388.

{¶20} Danielle complains that two direct deposits into David's Huntington account, one in the amount of $3,706 and the other in the amount of $3,822, were not included in the division of marital assets. David testified that these were regular paychecks that went directly into his individual Huntington account. (Apr. 1, 2016, tr. 97.) As previously stated, David paid Danielle temporary child and spousal support based on his 2015 income. Therefore, these paychecks were accounted for in David's

monthly spousal and child support payments, and Danielle stipulated that the $105,000 remaining in David's Huntington Bank account should be allocated to David without offset.

{¶21} Danielle argues the trial court also failed to allocate (1) $165,484.93 in bonus monies David received from R.W. Baird and (2) an unspecified sum of money from R.W. Baird investment account #8353. Although the magistrate's decision does not mention R.W. Baird investment account #8353 in her decision, there was evidence that the account was depleted long before trial and there was nothing left to divide. Indeed, the parties did not include the account in their stipulated list of marital assets.

{¶22} Furthermore, Danielle does not cite any evidence in the record demonstrating the existence of R.W. Baird investment account #8353 at the time of trial, the amount of funds in the account, or what happened to the funds. She cites no evidence to support a claim to any interest in the account. App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error * * * if the party raising it fails to identify in the record the error on which the assignment of error is based * * *, as required under App.R. 16(A)." Indeed, "[i]t is not this court's duty to search the record for evidence to support an appellant's argument as to alleged error." *James v. My Cute Car, L.L.C.*, 10th Dist. Franklin No. 16AP-603, 2017-Ohio-1291, ¶ 10; *see also Beck v. Beck*, 11th Dist. Lake No. 2016-L-054, 2017-Ohio-1106, ¶ 11 ("It is not the role of this court to comb the record in search of evidence to support an appellant's argument.").

Therefore, Danielle's claim to any interest in R.W. Baird investment account #8353 fails for lack of evidence.

{¶23} The $165,484.93 in bonus money, like the direct deposits discussed above, is income that was accounted for in the temporary child and spousal support awards. The judgment entry awarding Danielle temporary support expressly states that the award was based on both David's base salary of $160,000 plus his 2015 bonus. Indeed, the court found that David's 2015 income, on which it calculated temporary support, was $470,000 (base salary plus bonus) and awarded Danielle $14,166.66 per month, plus a two percent processing fee. Therefore, the trial accounted for David's bonuses in its award of temporary spousal support.

**Contingent Tax Liabilities**

{¶24} Danielle argues the trial court also abused its discretion by prematurely including tax liabilities in the division of marital property since the liabilities were contingent on David's continued employment with R.W. Baird. David testified that when he was hired by R.W. Baird in 2012, he received a $50,000 signing bonus, which operated as a loan that was forgiven at a rate of $10,000 per year, contingent on David's continued employment. Consequently, David received, and would continue to receive, an additional taxable income amount of $10,000 on his W-2 form every year until the loan was completely forgiven. If David quit his employment at R.W. Baird before the end of the five years, he would have to repay the balance of the $50,000 loan.

{¶25} David received a second loan in 2013 in the form of a stock purchase, which was also subject to the same five-year loan forgiveness plan, i.e., he receives $10,000 in loan forgiveness for the stock purchase per year. At the time of trial, David still owed R.W. Baird $20,000 on the "signing bonus" loan and $30,000 on the "stock purchase" loan. Therefore, if he continued his employment, he would be taxed at a rate of $10,000 per year on each loan for the next two to three years, respectively. Pursuant to the parties' stipulations on marital assets, the $10,000 credit for loan forgiveness on each loan is taxed at a rate of 30 percent, or $3,000 per year, per loan. The trial court included the outstanding loan balances and the current tax liabilities for the current year in the division of marital debts and attributed them to David.

{¶26} Danielle contends the trial court's allocation of David's contingent loans to him constituted reversible error. However, it is undisputed that both parties received the benefit of the $50,000 signing bonus when it was paid to David in 2012. The parties also benefitted from the stock purchase loan, which was awarded to David in 2013. Danielle cites no legal authority to support her argument that it was inequitable to allocate a contingent or forgivable loan balance to David.

{¶27} Although David may never have to repay the outstanding balances, the court assigned the risk of repayment to David instead of Danielle because they related to David's employment. Someone has to bear the risk of repayment. And even if the loan balances are eventually forgiven in their entirety, David will have paid $15,000 in taxes on the income generated by the forgiveness. Under these circumstances, we cannot say

the court's allocation of contingent debts and tax liabilities to David was inequitable or an abuse of discretion.

{¶28} Moreover, Ohio courts have held that a contingent bonus initiated during a marriage must be allocated as a marital asset or debt, as the case may be. *See Kaechele v. Kaechele*, 35 Ohio St.3d 93, 97, 518 N.E.2d 1197 (1988) (contingent bonus generated during marriage must be allocated as marital property); *Simonetti v. Simonetti*, 5th Dist. Delaware No. 04CAF05039, 2004-Ohio-6754, ¶ 33-35 (same). Therefore, the trial court properly considered the contingent loans as marital debts and allocated them to David.

## Financial Misconduct

{¶29} Although not designated as a separate assignment of error, Danielle argues the trial court erred in failing to hold David accountable for financial misconduct. She contends his act of liquidating an R.W. Baird IRA account constituted financial misconduct and violated the trial court's mutual restraining orders.

{¶30} "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(4). A spouse commits "financial misconduct" if he or she engages in intentional conduct by which he or she either profits from the misconduct or intentionally defeats the other spouse's interest in marital assets. *Brown v. Brown*, 8th Dist. Cuyahoga No. 100499, 2014-Ohio-2402, ¶ 14, citing *Haynes v.*

*Haynes*, 8th Dist. Cuyahoga No. 92224, 2009-Ohio-5360, ¶ 35.   The complaining spouse bears the burden of proving financial misconduct.   *Id.*

**{¶31}** It is undisputed that in March 2015, Danielle took nearly half of the bonus David received in January of that year.   Yet, David's monthly spousal and child support payments were based on his annual income, which included the half of the bonus Danielle had already received.   For this reason, the trial court recognized in the temporary support judgment entry that "Defendant's actual monthly wage withholding will be insufficient to pay his monthly obligation as ordered.   Defendant shall therefore supplement the monthly wage withholding with an amount paid * * * from other funds available to him."

**{¶32}** David was required to pay a total of $15,432 in temporary spousal and child support every month.   David admitted that he used some marital savings to pay the temporary support obligations as well as his own living expenses because his monthly take-home pay was not enough to pay all of these expenses.   Consequently, David liquidated an IRA account to meet these expenses and incurred a tax liability in the amount of $66,268 as a result.   Although the IRA account was subject to the mutual restraining orders, the temporary support order effectively authorized the liquidation because it provided that David could supplement the monthly wage withholding for support payments with funds from other marital assets.   Therefore, David was not in violation of any court order for liquidating the IRA account.

**{¶33}** Moreover, Danielle fails to establish that David either profited by the liquidation or defeated her interest in the IRA.   If he defeated her interest in the IRA

account by incurring a tax liability, he likewise defeated his own interest in the account to the same degree. However, he liquidated the IRA account to avoid being held in contempt for failure to pay the court-ordered temporary child and spousal support. Moreover, the court specifically accounted for, and held David responsible for his use of marital assets to pay his attorney fees and litigation expenses. Under these circumstances, we find neither financial misconduct nor an abuse of discretion.

{¶34} Therefore, the first assignment of error is overruled.

## B. Spousal Support

{¶35} In the second assignment of error, Danielle argues the trial court abused its discretion in its determination of the amount and duration of spousal support. She also contends the trial court erred in ordering her to repay David an overpayment of temporary spousal support in the amount of $10,996.74.

{¶36} The trial court must consider the factors listed in R.C. 3105.18(C) in determining the amount and duration of spousal support. *Deacon v. Deacon*, 8th Dist. Cuyahoga No. 91609, 2009-Ohio-2491, ¶ 57, citing *Kaechele*, 35 Ohio St.3d at 96-97, 518 N.E.2d 1197. These factors include each party's income, earning capacity, age, retirement benefits, education, assets and liabilities, and physical, mental, and emotional condition, the duration of the marriage, their standard of living, inability to seek employment outside the home, contributions during the marriage, tax consequences, and lost income due to a party's fulfillment of marital responsibilities. R.C. 3105.18(C)(1)(a)-(m). The trial court is also free to consider any other factor that the

court finds to be "relevant and equitable." R.C. 3105.18(C)(1)(n). The goal of spousal support is to reach an equitable result. *Kaechele* at 96.

**{¶37}** Danielle argues the trial court failed to articulate the basis for its spousal support award in sufficient detail. While there is no set mathematical formula for determining an equitable award, the court must consider all of the statutory factors listed in R.C. 3105.18(C) and "not base its determination upon any one of those factors taken in isolation." *Id.* The trial court is not required to enumerate each statutory factor, but it must demonstrate that it considered all of the "relevant factors." *Williams v. Williams*, 8th Dist. Cuyahoga No. 103975, 2016-Ohio-7487, ¶ 10, citing *Marsh v. Marsh*, 6th Dist. Ottawa No. OT-09-036, 2010-Ohio-5023, ¶ 6.

**{¶38}** Furthermore, the trial court's decision must explain the basis for its spousal support award "in sufficient detail to permit a reviewing court to determine that the award is fair." *Branden v. Branden*, 8th Dist. Cuyahoga No. 91453, 2009-Ohio-866, ¶ 16; *Friedler v. Friedler*, 8th Dist. Cuyahoga No. 92402, 2009-Ohio-4719, ¶ 14. "If the court's entry 'does not provide some illumination of the facts and reasoning for the award, the case should be remanded.'" *Springer v. Springer*, 7th Dist. Jefferson No. 15 JE 0001, 2016-Ohio-5580, ¶ 9, quoting *Boney v. Boney*, 7th Dist. Noble No. 09 NO 363, 2010-Ohio-4245, ¶ 23.

**{¶39}** The magistrate's decision indicates that the spousal support award represents 46.4% of David's 2016 income. Courts often average an obligor's income over a period of years for purposes of determining spousal support when the obligor's

income fluctuates or is not consistent. *Barney v. Barney*, 9th Dist. Summit No. 26855, 2013-Ohio-5407, ¶ 16; *Davis v. Davis*, 11th Dist. Geauga No. 2011-G-3018, 2013-Ohio-1118, ¶ 70-72; *Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011-Ohio-2087, ¶ 58; *Shreyer v. Shreyer*, 5th Dist. Fairfield No. 08CA17, 2008-Ohio-7013, ¶15.

{¶40} However, the magistrate acknowledged that "Husband's income is not as easy to peg or estimate in the future," due to dramatic fluctuations in the amount of David's January bonuses. The magistrate observed

> These bonuses have ranged from a high of $315,000 earned in 2013 to the current bonus of $255,000, which was earned in 2015 and paid in January 2016. For purposes of support, the Court is utilizing the most recent income earning for Husband, that of $415,000.

{¶41} The court explained that because David's income is inconsistent, it is difficult to predict his future earning. Due to enormous differences from year to year, an average of David's last three years of income would likely not match the actual amount of David's income over the next four years, especially since the last three years demonstrated a downward trend. Thus, averaging the last three years of David's income would not necessarily be an equitable solution. To remedy any unforeseeable injustice or change of circumstances, the trial court retained continuing jurisdiction to adjust the amount of spousal support if warranted in the future. (Magistrate's Decision 14.) Under these circumstances, we cannot say the failure to average David's income was an abuse of discretion.

{¶42} Danielle also argues the magistrate's decision fails to explain why the spousal support award was limited to a term of 48 months. However, the magistrate provided a written analysis of each of the factors set forth in R.C. 3105.18(C). With respect to Danielle's earning abilities, the magistrate observed that although Danielle earned an annual salary of $85,000 in 2005, she sacrificed her career to raise the parties' minor children and maintain the marital home. At the time of trial, Danielle had not worked outside the home in over 11 years.

{¶43} Nevertheless, the magistrate further observed that Danielle had the same level of education as David and suffered from no physical or mental handicaps that would prevent her from working. The magistrate concluded, based on David's testimony, that Danielle could return to work in the fall of 2016 because all the children would be in full day school. Four years (48 months) of spousal support is not long, particularly for someone who has not been in the work force for over 11 years. However, given that Danielle is young, healthy, and educated, the trial court reasonably concluded that she would be able to find sustainable employment within that period of time.

{¶44} Danielle argues the trial court abused its discretion in ordering her to repay David for an overpayment of temporary spousal support in the amount of $10,996.74. Prior to trial, David filed a motion to modify spousal support, arguing that a substantial reduction in income warranted a modification. In granting the motion, the magistrate explained that the temporary spousal support award was based on David's 2015 income, which was $470,000 (including bonus paid in January 2015). Although David's base

salary remained unchanged, David's income in 2016 was reduced to $415,000 due to a smaller January bonus. The trial court recalculated the spousal support obligation to allow Danielle to maintain 46.4% share of David's income, which reduced the monthly spousal support payment from $14,166.66 per month to $12,208.33 per month. The magistrate applied the modified monthly support amount retroactively from January 1, 2016, through May 1, 2016, the date of the magistrate's decision, and concluded that David overpaid his temporary spousal support obligation for those five months.

{¶45} The retroactive reduction based on reduced income is equitable for purposes of temporary spousal support. David's income was reduced by $55,000 from 2015 to 2016. It would be inequitable to require David to pay Danielle more than 50 percent of his income in temporary spousal support.

{¶46} Danielle nevertheless argues the trial court erred in ordering her to repay the overpayment because the repayment would amount to an "excessive financial hardship." Danielle cites *Sgro v. Sgro*, 8th Dist. Cuyahoga No. 80815, 2002-Ohio-4788, to support her argument. In *Sgro*, this court allowed the former wife to keep a child support overpayment of $ 2,717.60 as a setoff against future unreimbursed medical expenses for the couple's minor children. This court allowed the wife to retain the overpayment because the husband was responsible for uninsured/unreimbursed medical expenses and "he could not be counted on to pay the cost of their medical care." *Id*. at ¶ 10. There is no indication that David would not meet all of his support obligations.

**{¶47}** Moreover, the overpayment in *Sgro* represented several months of support whereas the overpayment in this case is less than one spousal support payment. *Sgro* is distinguishable from the facts presented in this case and is, therefore, inapplicable.

**{¶48}** The trial court properly ordered Danielle to repay the overpayment, which was based on a dramatic decrease in David's income. And because the trial court complied with the requirements of R.C. 3105.18 in its calculation of post-decree spousal support, we overrule the second assignment of error.

## C. Child Support

**{¶49}** In the third assignment of error, Danielle argues the trial court abused its discretion by incorrectly calculating David's income for purposes of child support. She contends the court failed to consider David's past income and erroneously applied David's lowest income figure without explanation.

**{¶50}** R.C. 3119.022 sets forth a basic child support computation worksheet to be used in calculating the amount of child support to be paid pursuant to a child support order. The child support schedule and computation worksheet apply when the parents' combined gross income is between $6,600 and $150,000 per year. R.C. 3119.021. However, when the parents' combined gross income is greater than $150,000 per year, a court "shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." R.C. 3119.04(B).

**{¶51}** The level of support for a combined gross income of $150,000 is the starting point from which a trial court determines a child support award for parents with higher incomes. *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 6. R.C. 3119.04(B) expressly prohibits a trial court from awarding less than that minimum unless it determines "that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount." *Id.* Thus, R.C. 3119.04(B) leaves the child support determination entirely to the court's discretion, unless the court awards less than the amount of child support listed for combined incomes of $150,000. *Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, ¶ 54, citing R.C. 3119.04(B).

**{¶52}** However, support awards in excess of the minimum are anticipated by R.C. 3119.04(B) in high income cases and are not considered deviations. *Bajzer* at ¶ 6. Thus, "'when the income of the parents is greater than $150,000, the appropriate standard for the amount of child support is 'that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued.'" *Id.*, quoting *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, 796 N.E.2d 541, ¶ 24 (9th Dist.), quoting *Birath v. Birath*, 53 Ohio App.3d 31, 37, 558 N.E.2d 63 (10th Dist.1988).

**{¶53}** Danielle argues the trial court failed to consider the children's standard of living and the "significant disparity" between the parties' incomes used to determine the child support award. She also argues the trial court should have applied the extrapolation method of calculating child support.

**{¶54}** The extrapolation method takes the applicable percentage under the child support schedules for couples with a combined income of $150,000 and applies it directly to the parents' actual combined income instead of capping the parties' combined income at $150,000. *Lanham v. Mierzwiak*, 197 Ohio App.3d 426, 2011-Ohio-6190, 967 N.E.2d 1256, ¶ 17 (6th Dist.). Although trial courts may, in their discretion, apply the extrapolation method, nothing in R.C. 3119.04, which governs the calculation of child support, mandates its application. *Siebert v. Tavarez*, 8th Dist. Cuyahoga No. 88310, 2007-Ohio-2643, ¶ 33 (application of the extrapolation method is optional and within court's discretion.). Therefore, we find no abuse of discretion in the trial court's decision not to apply the extrapolation method.

**{¶55}** In making its child support calculation, the court considered the fact that Danielle would receive $131,500 per year in spousal support. It also attributed $30,000 to her as her own income pursuant to her stipulation. Thus, for purposes of child support calculations, the court determined that Danielle, who was designated the residential parent, had an income of $161,500. Based on the parties' combined income in excess of $150,000, the court awarded Danielle $15,878 per year in child support for the parties' three children.

**{¶56}** Even if we discount the $30,000 attributed to Danielle as income, since she had no real income at the time of trial, Danielle would still receive $131,500 per year in spousal support, plus $15,878 in child support. Although Danielle complains that $15,878 is not sufficient to cover the entire cost of all the children's needs and

extracurricular activities, the trial court reasonably concluded that Danielle would spend some of her own money to support the children. Indeed, with spousal support, Danielle's income is comparable to David's. The combination of $131,500 per year in spousal support plus $15,878 per year in child support is sufficient to maintain the children in a comfortable lifestyle. And since the child support award is not below the minimum amount required for a combined income of $150,000, the award is not an abuse of discretion.

{¶57} Moreover, the trial court retains jurisdiction to modify the child support award if there is a change in circumstances. *See* R.C. 3119.79(A); R.C. 3111.16; Civ.R. 75. Thus, if Danielle's spousal support expires and she fails to obtain adequate employment, she may seek a modification of child support. But while Danielle receives a significant income through spousal support, it is only reasonable that she share the cost of raising her children.

{¶58} The third assignment of error is overruled.

### D. Attorney Fees

{¶59} In the fourth assignment of error, Danielle argues the trial court abused its discretion in ordering her to pay $50,720 towards David's outstanding attorney fees. Danielle also argues the trial court abused its discretion in denying her request for attorney fees.

{¶60} Pursuant to R.C. 3105.73(A), a court may award all, or part of, reasonable attorney fees and litigation expenses to either party if the court finds the award equitable

under the circumstances. In determining whether such an award is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." *Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 69.

{¶61} As previously stated, we review a trial court's judgment in a divorce action for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d at 144, 541 N.E.2d 1028. Therefore, our review of an award for attorney fees and expenses is limited to determining (1) whether the factual considerations upon which the award was based are supported by the manifest weight of the evidence, or (2) whether the domestic relations court abused its discretion. *Gentile* at ¶ 68.

{¶62} Danielle argues the trial court erroneously concluded that her sexual assault allegations against David were frivolous. She also contends that David's attorney fees and expenses in the amount of $302,853 were unreasonable because they were generated by two lawyers who charged exorbitant rates. At oral argument, Danielle's lawyer asserted that Danielle had a right to express concern that David abused the children and that David used the allegations as an excuse to request attorney fees solely for his own economic gain.

{¶63} However, in order to defend against allegations that David sexually abused his children, David's lawyers needed to consult with several experts. In granting David's motion for attorney fees and expenses, the magistrate explained that Danielle's allegations that David sexually abused the parties' children caused the parties to employ

"a myriad of professionals, including a guardian ad litem, a custody evaluator, mental health professionals, supervised visitation specialists, a polygrapher, a psychosexual evaluator, criminal attorneys and a computer evaluator."  (Magistrate's Decision 19.) These consultations generated legal fees in addition to each expert's professional fees.

**{¶64}** Additionally, one of David's lawyers testified he believed his last bill, in the amount of $50,962.36, was generated in preparation for trial as a result of Danielle's refusal to engage in settlement discussions.   In his opinion, "all but the sum of $10,000 in attorney fees was related to Mother's conduct throughout the case."

**{¶65}** David's attorney fees and expenses totaling $302,853 included fees generated by two lawyers, expert fees, and the costs for depositions and transcripts.   The magistrate listed the following expert and professional fees in her decision:

> [T]otal fees of $41,457 for the Guardian ad litem, $21,813 for the custody evaluator Dr. Afsarifard, $2,460 for Candace Risen [L.I.S.W.], $1,025 in supervision costs to "Supervisors for You," $11,655 to Avery Behrman for supervision costs, $7,280 to Dr. Mark Lovinger, $1,300 to * * * a criminal defense attorney, and $1,884 to Vestige, a charge for a response to subpoena.

These expenses were incurred as a result of the sexual abuse allegations.

**{¶66}** Danielle asserts that because the sex abuse allegations were not frivolous, she should not have to pay David's attorney fees.   However, on cross-examination, Danielle admitted that three separate police agencies investigated the allegations and determined they were unsubstantiated.   She also admitted that the children never disclosed any inappropriate behavior on the part of their father to their pediatrician despite the fact that she encouraged such disclosures.   Although the investigations into

alleged sexual abuse closed in the summer of 2015, Danielle persisted in trying to convince the court that David was a child molester for the next eight months. Even if Danielle believed there was real cause for concern, after the multiple investigations found no evidence to substantiate her allegations, she should have surrendered the claims, which were doomed to fail. Instead, she refused to negotiate a shared parenting plan and insisted that David only be allowed supervised visits with the children until the youngest child was 12 years old.

{¶67} According to the magistrate's decision, David presented Danielle with a proposal for a dissolution in February 2015, but she never countered the proposal until the time of trial. The magistrate also noted that Danielle refused to negotiate at a settlement conference because she wanted to see the report of Farshid Afsarifard, Ph.D., the custody evaluator. Yet, at the next settlement conference she again refused to negotiate even though she had reviewed Dr. Afsarifard's report. Indeed, Danielle continued to refuse to engage in settlement talks after another psychological expert found that David exhibited no signs of sexual deviance and the results of a polygraph test revealed nothing incriminating.

{¶68} Despite Danielle's statements to the contrary, her claims that David sexually abused the parties' children significantly increased the cost of litigation. Reasonable suspicions of sexual abuse should be investigated. However, Danielle refused to surrender her claims of sexual abuse after thorough and intense investigations determined they were unfounded. And it should be remembered that, as a result of Danielle's

allegations, David was investigated for allegedly raping one of his children. It would have been inequitable to require David to bear the full amount of his litigation costs, since they were inflated as a direct result of Danielle's conduct.

{¶69} Danielle argues that David's fees are excessive because he employed two lawyers, who charged higher hourly rates than her own lawyers. She also contends the attorney fee award in David's favor is inequitable because his income is significantly greater than hers.

{¶70} "Where the amount of an attorney's time and work is evident to the trier of fact, an award of attorney fees, even in the absence of specific evidence to support the amount, is not an abuse of discretion." *Dotts v. Schaefer*, 5th Dist. Tuscarawas No. 2014 AP 06 0022, 2015-Ohio-782, ¶ 17. Indeed, domestic relations courts often rely on their own knowledge and experience to determine the reasonableness of attorney fees. *See e.g., Long v. Long,* 10th Dist. Franklin No. 11AP-510, 2012-Ohio-6254, ¶ 20 ("The trial court * * * is not required to hear [expert] testimony and may rely on its own knowledge and experience to determine the reasonableness of the amount claimed."); *Lundy v. Lundy*, 11th Dist. Trumbull No. 2012-T-0100, 2013-Ohio-3571, ¶ 55 (Trial court "may evaluate the work performed by an attorney in a domestic-relations action * * * [a]nd * * * may use its own knowledge and experience to determine the reasonableness [of] the amount claimed."); *Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, 834 N.E.2d 15, ¶ 44 (10th Dist.) (same); *Gore v. Gore*, 2d Dist. Greene No. 09-CA-64, 2010-Ohio-3906, ¶ 39.

**{¶71}** Evidence of the time David's attorneys spent defending against the sex abuse allegations is evident from the record. Undoubtedly, the total cost of the litigation was driven more by the need to defend David from the allegations than from higher than average hourly rates. And although Danielle was not employed at the time of trial, the income she receives in the form of spousal support is comparable to David's income after the spousal support deductions. There is no disparity in income. Therefore, the trial court's award of attorney fees and expenses was equitable and within the trial court's discretion.

**{¶72}** The fourth assignment of error is overruled.

### III. Conclusion

**{¶73}** Despite Danielle's arguments to the contrary, the trial court equitably divided all marital assets and debts in accordance with the parties' stipulations and trial testimony. The trial court also acted within its discretion when it allocated the contingent loans David received from his employer to David along with their attendant tax liabilities. David's liquidation of an IRA account to pay temporary support and living expenses did not constitute financial misconduct because David did not have sufficient net income to pay those expenses and the temporary support order authorized the use of marital assets.

**{¶74}** The trial court sufficiently analyzed the statutory factors set forth in R.C. 3105.18(C) in its calculation of the amount and duration of spousal support. Although the trial court based David's future income solely on his 2016 income, the

calculation was reasonable given the inconsistent nature of David's earnings. The four-year term of the spousal support was also reasonable since Danielle is young, healthy, and capable of finding suitable employment within that period of time.

**{¶75}** The child support award of $15,878 per year was not an abuse of discretion. The trial court was not required to apply the extrapolation method to calculate child support, and the amount did not deviate below the minimum amount required for parents with a combined income over $150,000 per year.

**{¶76}** Finally, the trial court's decision to require Danielle to pay David $50,720 in attorney fees and expenses was not an abuse of discretion since Danielle's pursuit of unsubstantiated accusations that David sexually abused his children unnecessarily inflated the attorney fees and litigation expenses.

**{¶77}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

TIM McCORMACK, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR