[Cite as *Thomasson v. Thomasson*, 2020-Ohio-3890.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CHARLES W. THOMASSON,  :

    Plaintiff-Appellee
    Cross-Appellant,  :

                            No. 108813

    v.  :

CAROL J. THOMASSON,  :

    Defendant-Appellant
    Cross-Appellee.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN
PART, AND REMANDED
**RELEASED AND JOURNALIZED:** July 30, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. DR-15-355368

---

### *Appearances:*

Paul W. Flowers Co. L.P.A., Paul W. Flowers, and Louis E. Grube; The Law Offices of Anne S. Magyaros, and Anne S. Magyaros, *for appellee/cross-appellant*;

Kronenberg & Belovich Law, L.L.C., and Jacob A.H. Kronenberg, *appellee* GAL.

Stafford Law Co., L.P.A., Joseph G. Stafford, and Nicole A. Cruz, *for appellant/cross-appellee.*

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant/cross-appellee Carol J. Thomasson ("Carol") appeals the trial court's judgment entry of divorce. For the reasons that follow, we affirm in part, reverse in part, and remand for the trial court to hold a hearing on the guardian ad litem's ("GAL") fees.

{¶ 2} Carol and plaintiff-appellee/cross-appellant Charles W. Thomasson ("Charles") were married for 33 years and did not have any children together. During part of their marriage and until they separated, Carol worked for Charles at an American Financial Services ("AFS") franchise that he owned. In 2013, Charles moved out of the marital home and purchased a house and property in Bristolville, Ohio.

{¶ 3} In 2015, Charles filed a complaint for divorce. Carol filed a motion for temporary support, which the trial court granted in the amount of $17,000 a month. Charles moved to modify spousal support, arguing that the trial court had improperly calculated his income for support purposes. The trial court modified spousal support from $17,000 a month to $11,000 a month. The support order further provided that Carol was to pay all of the expenses associated with the marital residence located in Solon, Ohio. Charles was ordered to maintain health insurance coverage for Carol during the pendency of the action.

{¶ 4} Prior to trial, the court appointed a GAL for Carol. Carol appealed this action, but this court sua sponte dismissed her appeal for lack of a final, appealable order. *See Thomasson v. Thomasson*, 8th Dist. Cuyahoga No. 104579.

Carol filed a notice of appeal with the Ohio Supreme Court that reversed this court, finding that: (1) the order appointing the GAL was a final, appealable order; and (2) a GAL should not have been appointed without an incompetency adjudication; therefore, the court's order appointing a GAL violated Carol's right to due process. *Thomasson v. Thomasson*, 153 Ohio St.3d 398, 2018-Ohio-2417, 106 N.E.3d 1239, ¶ 35-36. The court remanded the case to the trial court, and the case proceeded to trial in February 2019.

{¶ 5} On July 16, 2019, the trial court entered the final decree of divorce judgment entry. In the decree, the trial court ordered Charles to pay spousal support in the amount of $11,000 per month, effective May 1, 2019, for an indefinite period of time (until the death of either party). Charles was further ordered to pay a portion of Carol's attorney fees in the amount of $100,000. With respect to temporary support, the trial court found Charles's arrearages to be $64,947.74. The trial court granted GAL fees in the amount of $10,914.15 and ordered that the payment of GAL fees be fully credited towards Charles's temporary support arrearages, decreasing the arrearages to $54,060.59. The trial court also awarded each of the parties their individual residences and the contents of their homes free and clear of any claim from the other.

{¶ 6} Carol filed a timely notice of appeal; Charles filed a cross-appeal.

### Assignments of Error

I. The trial court abused its discretion in its determination of spousal support.

II.  The trial court erred as a matter of law and abused its discretion in its division of the marital businesses.

III.  The trial court erred as a matter of law and abused its discretion by granting attorney Kronenberg an award of guardian ad litem fees.

Cross-Assignments of Error

I.  The trial court denied the plaintiff due process of law.

II.  The  trial court abused its discretion through its determination of prospective spousal support and by awarding spousal support arrearages.

III.  The trial court abused its discretion in its division of the marital property.

IV.  In the event of a remand, the matter should be reassigned to a new domestic relations judge.

Law and Analysis

**Spousal Support – First Assignment and Second Cross-Assignment of Error**

{¶ 7}  In her first assignment of error, Carol contends that the trial court abused its discretion in its determination of spousal support.  In Charles's second cross-assignment of error, he also argues that the trial court abused its discretion in its determination of spousal support.

{¶ 8}  A trial court enjoys broad discretion in awarding spousal support. *Williams v. Williams*, 8th Dist. Cuyahoga No. 103975, 2016-Ohio-7487, ¶ 9, citing *Gordon v. Gordon*, 11th Dist. Trumbull No. 2004-T-0153, 2006-Ohio-51, ¶ 13.  The trial court must consider the factors enumerated under R.C. 3105.18(C)(1) in making the award.  *Stafinsky v. Stafinsky*, 116 Ohio App.3d 781, 784, 689 N.E.2d 112 (11th

Dist.1996).  It then must set forth the basis for its award in sufficient detail for adequate appellate review.  *Id.*  The trial court's award is reviewed for abuse of discretion.  *Gordon* at *id.*  An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 9} To determine "whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support," the trial court must consider the factors provided in R.C. 3105.18(C)(1), including, but not limited to:  (1) the relative earning abilities of the parties; (2) the ages and physical, mental, and emotional conditions of the parties; (3) the retirement benefits of the parties; (4) the duration of the marriage; (5) the standard of living of the parties established during the marriage; (6) the relative education of the parties; (7) the relative assets and debts of the parties, including but not limited to any court-ordered payments by the parties; (8) the time and expense necessary of the spouse seeking support to acquire education, training, or job experience; (9) the tax consequences for each party of an award of spousal support; and (10) any other factor that the court expressly finds to be relevant and equitable. *Id.*

{¶ 10} This court has held that in "'cases involving a marriage of long duration, parties of advanced age, and a homemaker-spouse with little opportunity to develop a career, a trial court may, in the proper exercise of its discretion, award

alimony terminable only upon certain contingencies.'" *Williams* at ¶ 24, quoting *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 68, 554 N.E.2d 83 (1990).

{¶ 11} Carol argues that the trial court should have awarded her an indefinite award of $20,000 per month instead of $11,000 per month. Carol contends that the indefinite spousal support award of $11,000 per month was an abuse of discretion because it was the same amount Charles was ordered to pay during the pendency of the action and, during the pendency of the action, Charles was able to pay spousal support and "live a lavish life" while Carol did not have the financial ability to do the same. Carol further contends that it is neither reasonable nor equitable that the spousal support order allows Charles to live so extravagantly while she is only able to meet her most basic needs.

{¶ 12} Charles contends in his cross-assignment of error that the trial court erred in granting $11,000 per month in spousal support due to the decrease in his income and the court did not support its finding that Charles owed $64,947.74 in spousal support arrearages.

{¶ 13} The Ohio Supreme Court has long recognized that a trial court must have discretion to do what is equitable upon the facts and circumstances of each divorce case. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Under this deferential standard, we may not freely substitute our judgment for that of the trial court. *Deacon v. Deacon*, 8th Dist. Cuyahoga No. 91609, 2009-Ohio-2491, ¶ 14.

{¶ 14} The trial court set forth a detailed and thorough finding regarding each of the applicable R.C. 3105.18(C)(1) factors. The court found pursuant to R.C. 3105.19(C)(1): (a) Charles is the owner of an AFS franchise and earned $525,100 in 2015, $547,898 in 2016, and $537,916 in 2017; Carol was employed by Charles from 1991 until 2013 but no evidence was presented of Carol's income; (b) Charles maintained an income of over $500,000 and can continue to do so while Carol has not worked since 2013; (c) although Charles testified he had a stroke in 2014, has had skin cancer and has a damaged heart, he did not provide medical records or expert testimony with regard to his medical conditions; Carol suffered from anxiety and depression and had a GAL appointed to her; (d) the retirement benefits were divided; (e) the duration of the marriage was 33 years; (g) the couple enjoyed a nice standard of living during the marriage; (i) the assets and liabilities of the couple were divided; (l) spousal support is taxable income to the recipient and not tax deductible to the payor; and (n) other factors included that Carol was a homemaker during their marriage and Charles continued to go on vacations during the pendency of the divorce and support his girlfriend and her three children.[1]

{¶ 15} Upon review of the case, we find no abuse of discretion. Contrary to Carol's assertions, the trial court expressly took into consideration Charles's lifestyle, his travels, and his support of his girlfriend and her children. Contrary to Charles's arguments, there was support for the arrearage amount of $64,947.74 as

---

[1]The court found R.C. 3105.18(C)(1)(f), (h), (j), (k), and (m) were either not applicable or no evidence was presented to support the factors.

evidenced by defendant's Exhibit CC, which was a summary exhibit of cancelled checks from Charles's bank statements that reflected his spousal support statements.

{¶ 16} Evid.R. 1006 provides:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

{¶ 17} Moreover, Carol submitted the complete account statements and checks that comprised Exhibit CC in other exhibits admitted to the court (Exhibits N, O, P, and Q); thus, the supporting documentation used to create the summary exhibit was submitted to the trial court for review. The trial court did not err in relying on this evidence to calculate Charles's support arrearages.

{¶ 18} The trial court's decision is well supported in the record, and there is competent, credible evidence going to all of the statutory elements for establishing the spousal support order. Thus, the trial court did not abuse its discretion in awarding Carol $11,000 per month in spousal support for an indefinite duration. The trial court also did not abuse its discretion in ordering Charles to pay $64,947.74 in arrearages.

{¶ 19} Therefore, Carol's first assignment and Charles's second cross-assignment of error are overruled.

**Division of Marital Property — Second Assignment and Third Cross-Assignment of Error**

{¶ 20} In her second assignment of error, Carol contends that the trial court erred in its division of the marital business. In his third cross-assignment of error, Charles argues that the trial court abused its discretion when dividing marital property.

{¶ 21} Carol claims that the court abused its discretion when it failed to set forth a specific time frame that Charles must transfer $455,000 to Carol, which is the monetary equivalent of 50 percent ownership interest in the AFS franchise.

{¶ 22} R.C. 3105.171 requires a trial court to equitably distribute marital property. *Rodgers v. Rodgers*, 8th Dist. Cuyahoga No. 105095, 2017-Ohio-7886, ¶ 13.

{¶ 23} As part of the judgment entry of divorce, the trial court found the following: the American Financial Services franchise was valued at $910,000; the business was marital; Charles executed an agreement for the purchase and sale of the franchise in November 2017, and at that time, the beneficiary on the agreement was his girlfriend, which was in direct violation of the court's restraining order; no evidence was presented whether the purchase was ever completed; Carol was to receive one-half of the value of Charles's ownership interest ($455,000) upon the completion of the purchase agreement; Charles was to immediately designate Carol as the sole beneficiary to any and all sale contracts for his interest in his business and provide proof of such designation.

{¶ 24} Carol claims that the trial court abused its discretion because it failed to set forth a time in which Charles had to pay Carol the $455,000; according to Carol, Charles should have to pay her $91,000 a year for five years plus 5 percent interest until the sum is paid.

{¶ 25} Carol relies on this court's decision in *Woyt v. Woyt*, 8th Dist. Cuyahoga Nos. 107312, 107321, and 107322, 2019-Ohio-3758, to support her claim that the trial court abused its discretion. In *Woyt*, the wife was awarded one-half of $132,817.53 of a capital account that the husband had with his employer. In reversing the trial court, this court noted that the trial court erred when it ordered that the wife "not be immediately compensated * * * but instead ordered distribution over an indefinite time and in a piecemeal fashion." *Id.* at ¶ 31. This court noted that "whether or when" the wife received her share of the account was determined entirely by the husband's employer, with whom the husband maintained a partnership interest. *Id.* at ¶ 33. This court further noted that the husband continued to live in the marital home and earned $340,000 a year, while the wife was unemployed and lived with her parents. *Id.* This court also noted that its decision was based on the facts and circumstances of that particular case. *Id.* at ¶ 32.

{¶ 26} Here, Charles had already executed an agreement for the purchase and sale of the franchise in November 2017. The trial court ordered that Charles immediately designate Carol the sole beneficiary to any sales contract for his interest in the business and ordered that she receive one-half the value of the business upon

completion of the purchase agreement. The judgment entry further provided that the trial court retain jurisdiction, and that all restraining orders remain in place and will be released "upon the discretion of the court when the terms and conditions of the order have been satisfied including but not limited to the division of retirement assets and payments of funds set forth herein." Thus, if Charles does not pay Carol in a timely fashion, Carol can file a motion with the trial court pursuant to the judgment entry of divorce.

{¶ 27} In his cross-assignment of error, Charles contends that the trial court did not equitably divide the furnishings from the marital home. As mentioned, the trial court awarded each party their individual residences and the contents of their homes free and clear of any claim from the other.

{¶ 28} The record reflects that Charles moved out of the marital home in 2013 and purchased a house in Bristolville, Ohio, where he resided with and supported his girlfriend and her three children. During trial, Charles "guessed" that the value of the contents of the marital home were $25,000; his guess was based on his memory from when he last lived in the house — 2013. He valued the contents of his current home at $15,000. Charles claims he is therefore owed a $10,000 offset for the value of the contents of the marital home. In 2014, however, Charles represented on a bank loan application that the contents of the marital residence were valued at $10,000. Thus, we are not persuaded by his claim that the contents of the martial home should be valued at $25,000.

{¶ 29} The trial court did not abuse its discretion when it ordered that each party maintain the contents of their individual residences free and clear of any claim from the other.

{¶ 30} We find no abuse of discretion in the division of marital assets. Accordingly, Carol's second assignment and Charles's third cross-assignment of error are overruled.

**GAL Fees – Third Assignment of Error**

{¶ 31} In the third assignment of error, Carol claims that the trial court abused its discretion when it awarded the GAL his fees without giving Carol an opportunity to challenge those fees.[2]

{¶ 32} The GAL submitted a fee bill stating that he expended 55 hours of his time and 20 hours of his paralegal's time working on the case before the Ohio Supreme Court issued its ruling finding that Carol's due process rights had been violated and the trial court should not have appointed a GAL. *See Thomasson*, 153 Ohio St.3d 398, 2018-Ohio-2417, 106 N.E.3d 1239, at ¶ 35-36. In its judgment entry of divorce, the trial court determined that the GAL should be compensated for the time spent on the case under the equitable theory of quantum meruit, citing the Ohio

---

[2]The GAL filed a motion to intervene in the appeal for the limited purpose of addressing Carol's third assignment of error, which this court granted. In his brief, Charles stated that he agreed with Carol that the GAL should not be awarded any fees without a hearing. During oral argument, counsel for Charles stated that his client's position was that the trial court correctly awarded the GAL fees but, upon query, did not think that the GAL fees should be split between the parties, i.e., the trial court correctly awarded 100 percent of the GAL fees towards Charles's spousal support arrearages.

Supreme Court's decision in *Reid v. Lansberry*, 68 Ohio St.3d 570, 629 N.E.2d 431 (1994). The trial court ordered that the GAL's fees be paid out of Charles's arrearages, which meant that 100 percent of the fees would be charged to Carol.

{¶ 33} Carol challenges that finding, arguing that it violates her due process right because the court failed to hold a hearing on the GAL fees and further contends that Charles should pay for one-half of the GAL fees.

{¶ 34} Loc.R. 35(E) of the Cuyahoga County Court of Common Pleas, Domestic Relations Division provides that upon a motion for GAL fees "the Court shall conduct a hearing to determine if the fee sought by the [GAL] is reasonable and necessary. The Court may presume that each party will contribute equally to the fee for the [GAL]. That presumption may be rebutted by good cause."

{¶ 35} This court has held that a trial court abuses its discretion when it fails to hold a hearing to determine if the guardian ad litem fees are reasonable. *Carr-Woodard v. Woodard*, 8th Dist. Cuyahoga No. 103283, 2016-Ohio-5134; *In re D.C.J.*, 2012-Ohio-4154, 976 N.E.2d 931 (8th Dist.).

{¶ 36} Loc.R. 35 is clear; the trial court must hold a hearing upon application for GAL fees. The trial court in this case did not. We find it was error for the trial court to award GAL fees without holding a hearing.

{¶ 37} Loc.R. 35 also provides that the court may presume that the parties will split the fees equally but that presumption may be rebutted by good cause. The trial court made no finding in this regard. Thus, it was error for the trial court to credit 100 percent of the fees towards Charles's spousal support arrearages without

first finding that the presumption that the parties would contribute equally to the cost of the GAL had been rebutted by good cause.

{¶ 38} The third assignment of error is sustained in part, and the case is remanded for a hearing on the issue of the GAL fees.

**Due Process – First Cross-Assignment of Error**

{¶ 39} In the first cross-assignment of error, Charles contends that he was denied due process during trial because the trial court did not allow him to reopen his case in chief and adopted unfair trial procedures with regard to attorney fees.

{¶ 40} The admission of rebuttal testimony is a matter within the trial court's discretion and a decision admitting or excluding such testimony will not be reversed absent an abuse of discretion. *Lips v. Univ. of Cincinnati College of Medicine*, 10th Dist. Franklin No. 12AP-374, 2013-Ohio-1205, ¶ 40.

{¶ 41} The party claiming a violation of due process typically must make a showing of identifiable prejudice. *Flynn v. State Med. Bd. of Ohio*, 2016-Ohio-5903, 62 N.E.3d 212, ¶ 50 (10th Dist.), citing *In re C.W.*, 9th Dist. Medina No. 06CA0033-M, 2006-Ohio-5635, ¶ 9.

{¶ 42} Charles claims that his due process rights were violated because (1) the trial court refused to grant him a continuance to rebut evidence that was presented during Carol's case in chief, and (2) the court allowed the "surprise admission" of redacted attorney-fee exhibits and required his counsel to cross-examine Carol's attorney "on-the-fly" on the issue of legal fees. We consider each of these claims in turn.

{¶ 43} First, Charles argues that he was prevented from rebutting his own testimony. During Charles's cross-examination, which was conducted during Carol's case in chief, Carol's attorney questioned Charles about numerous financial documents and emails that were entered into evidence pursuant to a stipulation. Charles argues that the court abused its discretion by refusing to allow his attorney to call him back to the stand to rebut the evidence that had been admitted during Carol's cross-examination of him.

{¶ 44} Charles directs this court to *Phung v. Waste Mgmt.*, 71 Ohio St.3d 408, 644 N.E.2d 286 (1994). In *Phung*, the plaintiff filed a wrongful-discharge and intentional infliction of emotional distress suit against his former employer. An expert presented by the employer opined that the plaintiff's delusional condition was caused by prior unrelated episodes. *Id.* at 408. The trial judge refused to permit the plaintiff to present rebuttal witnesses to challenge the facts upon which the expert was relying. *Id.* at 410. Although the plaintiff himself could have so testified in his case in chief, the Ohio Supreme Court found that the testimony of the two rebuttal witnesses was crucial, not cumulative, and should have been admitted by the trial court. *Id.* The court held that "[a] party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief." *Id.*

{¶ 45} *Phung* is inapposite. In this case, after Carol's attorney finished his cross-examination of Charles, Charles's counsel did not ask to question Charles further and did not request to offer rebuttal evidence or witnesses. The parties took

a recess and came back on the record with a stipulation with regard to the exhibits. The court asked Carol's attorney the following:

> Trial Court:  Are you finished with this witness?
>
> Carol's Attorney:  Other than the stipulation to these exhibits.
>
> Charles's Attorney:  We're going to have to go through them.  I haven't even gone through all of them yet.
>
> Trial Court: Okay.
>
> Carol's Attorney:  Okay.
>
> Trial Court:  Do you want him to step down or —
>
> Carol's Attorney:  No, she wants me to question him over all the exhibits.
>
> Charles's Attorney:  No, not necessarily.  I'm saying if we can —
>
> Carol's Attorney:  Can we have a half an hour? Maybe we'll have a stipulation and all we're left with is Carol for a short period of time, maybe finish Carol today.  I will be under five minutes with Carol.

(T. 430-431).

{¶ 46} The court held a recess after which Carol's attorney called Carol to the stand.  It was not until after Carol had testified and the court was ready to proceed to the final issue of attorney fees that Charles's attorney stated, "Your Honor, I still have my rebuttal."  After Carol's attorney testified about his attorney fees, Charles's attorney again stated that she would like to put on a rebuttal.  The trial court refused additional witnesses.

{¶ 47} Counsel for Charles did not ask to question him after his cross-examination nor did counsel proffer what Charles's testimony would have been had

he been allowed to give rebuttal testimony; thus, this court does not know, and will not presume, that the matters to what Charles would have testified to were crucial, not cumulative, and should have been admitted by the trial court. As such, we find no abuse of discretion.

{¶ 48} Next, Charles claims that the trial court abused its discretion when it allowed the "surprise admission" of redacted attorney-fee exhibits and required his counsel to cross-examine Carol's attorney "on-the-fly" about the attorney's legal fees.

{¶ 49} First, we note that Charles does not challenge the award of legal fees; therefore, we do not consider whether the trial court erred in awarding Carol $100,000 in attorney fees. Charles's claim is a due process claim — Charles argues that his due process rights were violated because the exhibits Carol's attorney testified to, and entered into evidence, were redacted, and the trial court did not grant her a one-day continuance to prepare her cross-examination.

{¶ 50} Upon review, we find no abuse of discretion. Loc.R. 21(A)(2) provides that "[a] request for attorney fees and expenses to defend an action shall be by motion filed at least 14 days prior to the hearing on the motion being defended." Loc.R.21(B) further provides that:

> At the time of the final hearing on the motion or pleading that gives rise to the request for attorney fees, the attorney seeking such fees shall present:
>
> (1) An itemized statement describing the services rendered, the time for such services, and the requested hourly rate for in-court time and out-of-court time;

(2) Testimony as to whether the case was complicated by any or all of the following:

(a) new or unique issues of law;

(b) difficulty in ascertaining or valuing the parties' assets;

(c) problems with completing discovery;

(d) any other factor necessitating extra time being spent on the case;

(3) Testimony regarding the attorney's years in practice and experience in domestic relations cases; and

(4) Evidence of the parties' respective income and expenses, if not otherwise disclosed during the hearing.

{¶ 51} Carol filed her answer and counterclaim in March 2015 and requested an award of attorney fees. She also filed motions for attorney fees prior to trial each time the case was for trial in January 2016, May 2016, and February 2017. On June 29, 2018, the trial court issued an order setting the matter for a February 2019 trial. The order read, in pertinent part: "Contested trial set for 2/04/2019 * * * MO.# 384321 filed on 1/08/2016 Motion for attorney fees * * * MO.# 388331 filed on 05-31-2016 Motion for attorney fees * * * MO.#396901 filed on 02/03/2017 Motion for attorney fees." Therefore, Charles was on notice that Carol's motions for attorney fees would be heard at trial. Moreover, Carol's attorney was listed on her witness list, which was filed with the court each time the case was set to go to trial.

{¶ 52} Finally, Charles has not supported his claim that Carol was required to submit unredacted attorney fee bills. The Ohio Supreme Court has held that the narrative portions of itemized attorney-fee-billing statements containing

descriptions of legal services performed by counsel are protected by attorney-client privilege. *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 28-29. The testimony at trial was that the portion of the attorney-fee bill that was redacted was narrative in form and included, for example, billing for telephone messages that would include who Carol's attorney was talking to and about what issues.

{¶ 53} Finding no abuse of discretion, the first cross-assignment of error is overruled.

**Remand – Fourth Cross-Assignment of Error**

{¶ 54} In the fourth cross-assignment of error, Charles states that "[i]n the event of a remand, this Court should direct that the matter be reassigned to a new judge" to protect his due process rights. The case is being remanded solely for a hearing in accordance with Loc.R. 35. We see no reason to instruct the domestic relations court to reassign the case. *See generally In re I.R.Q.*, 8th Dist. Cuyahoga No. 105924, 2018-Ohio-292, ¶ 26.

{¶ 55} The fourth cross-assignment of error is overruled.

{¶ 56} Judgment affirmed in part and reversed in part; case remanded for a hearing on the GAL fees in accordance with Loc.R. 35.

It is ordered that appellant/cross-appellee and appellee/cross-appellant equally split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

ANITA LASTER MAYS, P.J., and
EILEEN A. GALLAGHER, J., CONCUR